**<u>NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER</u>**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000566
09-JUN-2023
08:02 AM
Dkt. 54 SO**

NO. CAAP-20-0000566

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
BRYENT K.M. KANESHIRO, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
(CASE NO.  1DTA-18-00712)

<u>SUMMARY DISPOSITION ORDER</u>
(By:  Hiraoka, Presiding Judge, Wadsworth and Nakasone, JJ.)

Defendant-Appellant Bryent K.M. Kaneshiro (**Kaneshiro**) appeals from the (1) October 4, 2019 "Notice of Entry of Judgment and/or Order and Plea/Judgment," (2) October 4, 2019 "Amended Notice of Entry of Judgment and/or Order and Plea/Judgment," and (3) September 11, 2020 "Notice of Entry of Judgment and/or Order and Plea/Judgment," all entered by the District Court of the First Circuit[1] (**District Court**), convicting him of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1).[2]

---

[1]    The Honorable Randal I. Shintani presided over the suppression hearing.  The Honorable Philip M. Doi presided over trial and entered the October 4, 2019 judgment and amended judgment.  The Honorable Alvin K. Nishimura entered the September 11, 2020 judgment.

[2]    HRS § 291E-61(a)(1) (2020) provides:

(continued...)

Kaneshiro raises three points of error on appeal,[3] contending that: (1) the "case must be dismissed pursuant to State v. Thompson where the complaint did not meet the requirements of HRS § 805-1";[4] (2) the District Court erred in "denying [Kaneshiro]'s motion to suppress his responses to the [medical rule-out (**MRO**)] questions and all evidence and statements that followed as the 'fruit of the poisonous tree'";[5] and (3) Kaneshiro "did not knowingly, intelligently and voluntarily waive his right to testify for purposes of the suppression motion."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Kaneshiro's points of error as follows, and vacate and remand for a new trial.

---

[2](...continued)

> (a) A person commits the offense of [OVUII] if the person operates or assumes actual physical control of a vehicle:
>
> (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

[3]     We have reordered Kaneshiro's points of error for clarity.

[4]     This point of error was raised in Kaneshiro's Supplemental Brief filed May 12, 2022.  The Plaintiff-Appellee State of Hawaiʻi (**State**) also filed a Supplemental Brief on May 13, 2022.  Kaneshiro was allowed to file the Supplemental Brief to address the Complaint in this case in light of State v. Thompson, 150 Hawaiʻi 262, 267-69, 500 P.3d 447, 452-54 (2021), in which the Hawaiʻi Supreme Court held that failure to comply with HRS § 805-1 renders a complaint "fatally defective," and that such a complaint cannot be used to support the issuance of an arrest warrant or penal summons.

[5]     Kaneshiro does not specify in this point of error what the "evidence and statements that followed" the MRO responses were, in violation of Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(A) (requiring each point to include "the full substance of the evidence admitted" when the point involves the admission of evidence).

**(1)** Kaneshiro argues that the Complaint was defective under HRS § 805-1[6] because no witness with direct observations of Kaneshiro's misconduct "subscribed to" or "submitted a declaration in support of the [C]omplaint."  Rather, the Complaint was signed by the prosecuting attorney.  Whether the Complaint complied with applicable statute and/or rule is a question of law we review *de novo*.  Thompson, 150 Hawaiʻi at 266, 500 P.3d at 451.

The Hawaiʻi Supreme Court recently held, in State v. Mortensen-Young, 152 Hawaiʻi 385, 397, 526 P.3d 362, 374 (2023), that HRS § 805-1 applies only to criminal complaints used to obtain a penal summons or arrest warrant.  In other cases, such as the OVUII prosecutions at issue in Mortensen-Young, Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 7[7] provides the proper framework to analyze the sufficiency of complaints.  Id. at 399, 526 P.3d at 376.  In Mortensen-Young, the supreme court held that the appellees were properly charged by complaint, signed by the prosecutor, for the offense of OVUII pursuant to HRPP Rule 7(d),

---

[6] HRS § 805-1 (2014) states, in pertinent part:

> **§ 805-1. Complaint; form of warrant.**  When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court. . . .

[7] HRPP Rule 7 states, in pertinent part:

> **Rule 7. INDICTMENT, INFORMATION, OR COMPLAINT.**
>
> . . . .
>
> (d) **Nature and contents.** The charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged . . . . A complaint shall be signed by the prosecutor. The charge need not contain a formal conclusion or any other matter not necessary to such statement . . . . The charge shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated.

which does not require that a "'charging instrument in a misdemeanor case be signed by anyone other than a prosecutor'" or "'subscribed under oath or made by declaration in lieu of an affidavit by anyone.'"   Id.

Here, as in Mortenson-Young, HRS § 805-1 is inapplicable because the Complaint was not used to obtain a penal summons or arrest warrant.  The Complaint set forth a concise and definite statement of the essential facts, was signed by the prosecutor, and referenced the statute that Kaneshiro allegedly violated, as required by HRPP Rule 7(d).  Thus, the Complaint was sufficient to initiate the subject prosecution.  See id. at 392, P.3d at 369; Thompson, 150 Hawaiʻi at 266-67, 500 P.3d at 451-52.

**(2)** Kaneshiro argues that because he was never advised of his Miranda[8] rights when he was pulled over, his responses to the MRO questions were the product of custodial interrogation, and the District Court should have suppressed "any statement and evidence obtained subsequent to the MRO questions as the 'fruit of the poisonous tree.'"

Questions of constitutional law, such as the District Court's ruling on the motion to suppress, are reviewed "de novo to determine whether the ruling was 'right' or 'wrong.'"  State v. Manion, 151 Hawaiʻi 267, 271-72, 511 P.3d 766, 770-71 (2022) (quoting State v. Lee, 149 Hawaiʻi 45, 49, 481 P.3d 52, 56 (2021)).

**Suppression hearing**

Kaneshiro's Motion to Suppress Statements (**Motion to Suppress**) requested suppression of the following:

> 1.  Any statements made by [Kaneshiro] to Honolulu Police Department [**HPD**] Officer or other governmental personnel.
>
> 2.  Any and all evidence seized or information gained by the [HPD] after [Kaneshiro] was placed under arrest, was not read his/her Miranda rights or was instructed that he/she did not have a right to have an attorney.

---

[8]      Miranda v. Arizona, 384 U.S. 436 (1966).

Kaneshiro principally argued what is the subject matter of the instant appeal –- that he was in custody and subject to interrogation in violation of his Miranda rights when he was stopped by HPD Officer Arthur Gazelle (**Officer Gazelle**). At the November 7, 2018 hearing on Kaneshiro's Motion to Suppress, Officer Gazelle testified that he stopped Kaneshiro after observing Kaneshiro "traveling faster than the posted speed limit" on the highway; crossing over a "solid yellow line"; and failing to use turn signals. As Officer Gazelle activated his sirens, Kaneshiro eventually pulled over at a "very narrow" shoulder lane, where Officer Gazelle instructed Kaneshiro to take the off-ramp and "pull into the parking lot" of an elementary school. Kaneshiro began to slowly drive off the highway to the off-ramp, where he stopped on the side of the road rather than in the parking lot of the elementary school. Upon approaching Kaneshiro's vehicle, Officer Gazelle noticed a "strong odor of alcohol on [Kaneshiro's] breath" and that he had "red and glassy" eyes. Kaneshiro's speech was "sluggish" and "slightly slurred." Officer Gazelle asked Kaneshiro to exit his vehicle for a standard field sobriety test (**SFST**), to which Kaneshiro agreed.

Prior to the SFST, Officer Gazelle asked Kaneshiro MRO questions, including whether Kaneshiro had "any physical defect or speech impediment"; was "taking any medication"; had "a doctor or an eye doctor"; was "under the care of a dentist"; had "an artifical or glass eye"; and was "diabetic or epileptic." In response to whether he had any speech impediment or an artificial or glass eye, Kaneshiro stated that he "mumbles sometimes" and has glasses.

Officer Gazelle administered the SFST and determined that Kaneshiro was unable to safely operate his vehicle. Kaneshiro was placed under arrest and charged with OVUII and excessive speeding.

The District Court denied the Motion to Suppress, ruling as follows:

It is -- in this case, there is an excessive [(speeding)] count as well as the OVUII. Court finds it was an ongoing investigation. There was no express statement by Officer Gazelle, I believe, that Mr. Kaneshiro -- Mr. Bryent Kaneshiro was under arrest for the excessive speeding. So at that -- there was no express decision that he was in custody. At that point, it was an ongoing investigation on the OVUII.

And the other arguments, [Defense Counsel], in your memorandum, the state of the appellate decisions right now regarding the rule-out and regarding the consent to exit, as long as there's consent, there's nothing that has been indicated otherwise, his willingness to exit the car at this point. So based on the evidence thus presented, appellate decisions, court's again denying your motion to suppress.

**Bench trial**

On July 26 and October 4, 2019, a bench trial was held. At trial, Officer Gazelle testified that he observed Kaneshiro speeding, drifting over a yellow lane marking, crossing over into another lane, and suddenly braking and slowing down. Officer Gazelle testified that when he initiated the stop, Kaneshiro failed to pull over at the next safest area, and proceeded to stop in a shoulder lane, "[p]artially blocking [an] active lane[.]" Officer Gazelle instructed Kaneshiro to take the next off-ramp and pull into a parking lot of an elementary school, upon which Kaneshiro proceeded to travel at about "10 to 15 miles an hour" off the freeway, where he eventually came to a stop on the side of a road. Upon approach, Officer Gazelle "smelled a strong odor of alcoholic-type beverage" "emitting from [Kaneshiro's] breath," and noticed that his speech was "sluggish." Officer Gazelle asked Kaneshiro if he would be willing to participate in a SFST, and Kaneshiro agreed.

Officer Gazelle testified that he asked Kaneshiro the MRO questions, to which Kaneshiro "mentioned that he mumbles and that he wears prescription glasses." Officer Gazelle also testified that in response to whether Kaneshiro had a glass eye, it was "odd" that Kaneshiro stated that he wore "glasses," and that based on his observations, "there was nothing that interfered" with Kaneshiro's "ability to perform the [SFST]."

6

Officer Gazelle could not remember any observations he made during the SFST and had to refresh his recollection by reviewing a SFST form that he had filled out on the date of the incident. Officer Gazelle then testified that he arrested Kaneshiro for OVUII and excessive speeding based on how Kaneshiro was "driving," "speaking," "smelt [sic]," "looked," "acting," "performed his [SFST]," and his "preliminary alcohol screening" result.[9] Officer Gazelle testified that in his opinion, Kaneshiro was "drunk," "impaired," and not driving or able to drive "safely."[10] However, Kaneshiro's driving, by itself, did

---

[9] Kaneshiro's preliminary alcohol screening result was not admitted into evidence.

[10] Over defense objection, Officer Gazelle testified that Kaneshiro was "drunk" and "impaired" as follows:

Q. [(By Prosecutor)] <u>In your opinion, was he drunk</u>?

A. [(By Officer Gazelle)] <u>Yes. Not falling down piss drunk, but he was drunk</u>.

Q. And, in your opinion, was it safe for [Kaneshiro] to operate his vehicle?

A. No, he wasn't operating his vehicle safely from what I observed.

. . . .

A. I don't have a present recollection of anything on the standardized field sobriety test.

Q. Okay. All of it is coming from your report?

A. Correct. I have present recollection of the driving and how he's acting. All the other stuff we testified to, I definitely remember all of that.

. . . .

Q. You refreshed your recollection with your report, but <u>based on your recollection apart from your report, do you still hold the opinion that the defendant was drunk on the night you pulled him over</u>?

A. <u>Yes, I believe he was impaired, and I believe that he did exhibit that he wasn't driving safely</u>. I watched him not drive safely.

(continued...)

not give Officer Gazelle the impression that Kaneshiro was "impaired" or under the influence.[11]

Kaneshiro made a motion for judgment of acquittal, which the District Court granted for the excessive speeding charge, but denied for the OVUII charge. Kaneshiro then made a "motion to strike the totality" of Officer Gazelle's testimony regarding Kaneshiro's performance on the SFST, because the officer had "no present recollection" of the SFST.[12] The District Court granted Kaneshiro's motion to strike the SFST. Kaneshiro then moved to strike Officer Gazelle's testimony regarding his opinion on whether Kaneshiro was "drunk" or "impaired," because this was "in part based on the results of the SFST." The District Court denied this motion because Officer Gazelle testified he "remember[ed] everything else" except for

---

[10](...continued)
(Emphases added).

[11]     Officer Gazelle testified as follows:

> Q. [(By Defense Counsel)] And the speeding didn't give you the impression that he was under the influence, correct?
>
> A. [(By Officer Gazelle)] In and of itself?
>
> Q. Correct.
>
> A. No.
>
> Q. And even the crossing over the lane lines didn't give you the impression that he was under the influence, correct?
>
> A. Are you going to break up every little observation in and of itself?
>
> Q. Just talking about the driving.
>
> A. Oh, okay. No.

[12]     Kaneshiro's counsel stated: "Your Honor, I would be also making a motion to strike the totality of the standardized field sobriety test. As Officer Gazelle testified, he has no present recollection about the SFST, and his testimony is purely based on basically reading his reports[.]"

the "particulars" of the SFST.[13]  Kaneshiro did not testify, but called a witness who was in Kaneshiro's vehicle at that time. The witness testified that they had just left a barbeque, that they "were confused" about where to pull over, and that she did not recall Kaneshiro drinking prior to him driving.

During closing argument, the State acknowledged that the case depended on Kaneshiro's driving and Officer Gazelle's "opinion as to intoxication," which was partly "based on the administration of the [SFST]."[14]  Kaneshiro argued that although

---

[13]     The District Court denied Kaneshiro's motion to strike Officer Gazelle's opinion testimony as follows:

> [DEFENSE COUNSEL]: . . . And I also think that his opinions based on Mr. Kaneshiro either being drunk or intoxicated or impaired, or whatever he said, should also be stricken because that was based on the standardized field sobriety test results --
>
> . . . .
>
> [DEFENSE COUNSEL]: When Officer Gazelle testified about, you know, why he arrested Mr. Kaneshiro for operating a vehicle under the influence and whether he had a lay opinion on whether he was intoxicated, Officer Gazelle testified that it was in part based on the results of the SFST, and if that is stricken, then his opinion should be stricken as well if he has no present recollection of it.
>
> . . . .
>
> THE COURT: The -- he's saying that today, in court, he has no present recollection of the particulars of the field sobriety test that he -- about which he was asked and -- and -- and -- and responded, that his responses were due solely to the report, but he said I remember everything else. And the opinion that he stated when questioned was based on a decision he made, I forget when it was, but sometime ago, and that decision was based on the -- the knowledge he had on that same evening from within the previous probably five minutes, maybe ten minutes, so --
>
> [DEFENSE COUNSEL]: Okay. Thank you.
>
> THE COURT: -- I'm denying that.

[14]     The State stated the following:

(continued...)

9

Officer Gazelle noted Kaneshiro's driving, there is "driving like this involving no alcohol[,]" and that Officer Gazelle testified that "the driving alone was not an indicator . . . that Mr. Kaneshiro was intoxicated."  Additionally, Kaneshiro argued that because Officer Gazelle's testimony regarding Kaneshiro being intoxicated was in part based on the stricken SFST, the District Court should not give much weight to the testimony.[15]

---

[14](...continued)
In this case, as with all OVUII cases, or most, we're looking at a couple of things. We're looking at driving, we're looking at indicia, and we're looking at the officer's opinion as to the intoxication, and that's based on the administration of the field sobriety test.

. . . .

But the officer did recall administering a complete SFST, and based on the SFST, the officer's observations of driving, in particular the hazardous driving, and the totality of the circumstances, the officer believed [Kaneshiro] to be both drunk and impaired and subject to arrest for OVUII.

[15] Kaneshiro argued that:

He -- Officer Gazelle testified that Mr. Kaneshiro told him that he mumbled.  Mumble and slur, he didn't say slur, he said sluggish, mumble and sluggish.  He was never asked could you explain the difference between a mumble and -- and sluggish?  That could explain the speech.

Officer Gazelle testified about the odor of alcohol and what it can tell him and what it can't tell him. He had no difficulty exiting the vehicle. And there is no field sobriety test.  Officer's opinion as to whether somebody is drunk as a lay testify -- person testifying has very little weight, and should have very little weight, especially since he's basing some of it on the observations on the standardized field sobriety test.  So this court shouldn't give much weight, if any, to Officer Gazelle's testimony that Mr. Kaneshiro was drunk or intoxicated, and -- and, besides that, being drunk and intoxicated is not the standard that the State has to prove. They have to prove impair -- impairment.  So neither of those opinions go to impairment.

The bottom line is in this particular case, the State has not proven beyond a reasonable doubt all of these things that the State points to. It

(continued...)

Kaneshiro was found guilty of OVUII.[16]  This appeal followed.

**Kaneshiro's responses to the MRO questions should have been suppressed.**

Kaneshiro argues that when he was pulled over by Officer Gazelle, he was in "custody" because Officer Gazelle had probable cause to arrest Kaneshiro for excessive speeding, and he was not free to leave.  Kaneshiro contends that the MRO questions

---

[15](...continued)
> says it could be because of this, it could be because of that. It could also be because people simply drive fast, people dis-- cross over lane markings on S turns, people get startled with -- with police officers or confused where they're going to pull over on the freeway. It could be -- it could be a whole bunch of things, and all of those could-be's are reasonable doubts. Thank you.

[16]   The District Court stated the following when finding Kaneshiro guilty:

> The burden that the State has, I think you left out one little portion, [Defense Counsel].  The State has to prove beyond a reasonable doubt, certainly, that alcohol was a contributing factor in the impairment, not that it was the sole cause of the impairment. And -- I -- I -- I think the -- the – the -- the driving as described by Officer Gazelle was not good, it was -- it was -- he -- he frankly said it was not safe driving. Yeah, you know, when people are -- can straighten out the S curve, I think we've all seen something like that happen, but this is at a very high speed, so the high speed could be maintained, blew past the SUV, but in particular hit the brakes when -- when he -- when Mr. Kaneshiro realized that the officer was behind him, which is an exceptionally, I would say, dangerous maneuver. Could possibly have been the -- the reason why Officer Gazelle spoke in an aggressive manner.

The District Court then recounted details regarding the physical location of the stop, and found Kaneshiro guilty as follows:

> I am — — bottom line — — okay, and no one — — no one's disputing the date or the time or the — — or the location of this, that it occurred in the City and County of Honolulu, State of Hawaii, and it was a public street, road or highway.  You're disputing the issues you actually addressed in closing, and I — — I — — Mr. Kaneshiro, I — — I — — I — — I'm left with the belief that State has proven beyond a reasonable doubt the elements of its case.  I'm finding you guilty of this charge of Operating a Vehicle Under the Influence of an Intoxicant.

constituted "interrogation" because they "were specifically designed to rule out any possible causes for irregularities on the SFST other than intoxication."

The District Court found that Kaneshiro was not in "custody," because when Officer Gazelle pulled Kaneshiro over for excessive speeding, Officer Gazelle made "no express statement" that Kaneshiro was under arrest for excessive speeding, and it was still an "ongoing investigation." The District Court also denied suppression of Kaneshiro's responses to the MRO questions because Kaneshiro consented to exit the vehicle for a SFST and willingly answered the MRO questions.

"[T]he requirement of *Miranda* warnings is triggered by two criteria: (1) the defendant must be under interrogation; and (2) the defendant must be in custody." State v. Ah Loo, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (cleaned up). The State in its Answering Brief presented no argument that Kaneshiro was not subjected to custodial interrogation, or that the MRO responses were admissible and should not have been suppressed.[17] Rather, the State presented argument based on the *arguendo* assumption that the District Court erred in failing to suppress Kaneshiro's MRO responses. The State's failure to argue that Kaneshiro was not in custody constitutes a waiver of that argument. See HRAP Rule 28(b)(7) and (c).

In State v. Skapinok, 151 Hawaiʻi 170, 185, 510 P.3d 599, 614 (2022) (citation omitted), the supreme court held that "all of the [MRO] questions are interrogation" because "[a]lthough the 'incriminating inference' may be indirect, the questions nevertheless adduce evidence to establish that intoxication caused any poor performance on the SFST."[18] Thus,

---

[17]    In this regard, the State argued: "Even assuming that the district court erred in failing to suppress Kaneshiro's answers to the medical rule-out questions, the district court did not err in refusing to suppress the remaining evidence and any error was harmless beyond a reasonable doubt[.]"

[18]    In Skapinok, the officer asked the following MRO questions:

(continued...)

<u>Miranda</u> warnings were required prior to the officer asking these questions.  Here, no <u>Miranda</u> warnings were given, and Kaneshiro's responses to the MRO questions should have been suppressed.  The District Court was wrong in this regard.  <u>See</u> <u>Manion</u>, 151 Hawai'i at 271-72, 511 P.3d at 770-71.

**The erroneous admission of the MRO responses was not harmless beyond a reasonable doubt.**

The State argues that even assuming that the District Court erred in failing to suppress the MRO responses, "any error in admitting them into evidence in the instant case was harmless beyond a reasonable doubt."  Kaneshiro argues that while the District Court "did not cite the specific bases for its verdict, the fact that it only excluded the SFST testimony and the court specifically stated that it disagreed with [d]efense [c]ounsel's argument in closing, evidence[s] that it relied upon evidence and statements which should have been suppressed."  Kaneshiro's argument has merit.

"Erroneously admitted evidence is evaluated under the harmless beyond a reasonable doubt standard."  <u>State v. Jones</u>, 148 Hawai'i 152, 170, 468 P.3d 166, 184 (2020) (citation and internal quotation marks omitted).  "The erroneous admission of evidence is not harmless when there is a <u>reasonable possibility</u> that the error might have contributed to the conviction."  <u>State</u>

---

[18](...continued)

| | | |
|---|---|---|
| i. | Do you have any physical defects or speech impediments? |
| ii. | Are you taking any medications? |
| iii. | Are you under the care of a doctor or dentist for anything? |
| iv. | Are you under the care of an eye doctor? |
| iv. | Do you have an artificial or glass eye? |
| v. | Are you epileptic or diabetic? |
| vi. | Are you blind in either eye? |

151 Hawai'i at 173-74, 510 P.3d at 602-03.  These questions are identical to the MRO questions that Officer Gazelle asked Kaneshiro.

v. Baker, 147 Hawaiʻi 413, 435, 465 P.3d 860, 882 (2020) (emphasis added) (citing State v. McCrory, 104 Hawaiʻi 203, 210, 87 P.3d 275, 282 (2004)).

Here, the record reflects that there is a reasonable possibility that the erroneous admission of the MRO responses might have contributed to Kaneshiro's OVUII conviction. See id. Officer Gazelle testified that prior to administering the SFST, he asked Kaneshiro the MRO questions, to which Kaneshiro responded that he "mumbles" and wore "prescription glasses." In response to whether Kaneshiro had a glass eye, Kaneshiro oddly responded that he wore "glasses." Based on Officer Gazelle's observations of the area where the SFST was administered, "there was nothing that would've interfered" with Kaneshiro's ability to perform the SFST. Officer Gazelle arrested Kaneshiro for OVUII based on how Kaneshiro was "driving," "smelt [sic]," "looked," "acting," "performed on his [SFST]," and the result of Kaneshiro's "preliminary alcohol screening." (Emphases added). Officer Gazelle did not remember the "specifics" of Kaneshiro's SFST performance, but recalled "administering" the test and how Kaneshiro was "acting" and "driving." Officer Gazelle's opinion that Kaneshiro was "impaired"[19] was based on his "recollection apart from [his SFST] report[.]"

The State argued in closing that while Officer Gazelle did not remember the specifics of Kaneshiro's SFST performance, he "did recall administering a complete SFST, and based on the SFST, the officer's observations of driving, in particular the hazardous driving, and the totality of the circumstances, the officer believed [Kaneshiro] to be both drunk and impaired and subject to arrest for OVUII." (Emphases added). In adjudicating Kaneshiro guilty of OVUII, the District Court found that "alcohol

---

[19] Officer Gazelle's opinion testimony that Kaneshiro was "drunk" or "impaired" is not subject to the 2020 holding in Jones, 148 Hawaiʻi at 176, 468 P.3d at 190, in which the supreme court prospectively held that: "police officers may no longer testify, whether in a lay or expert capacity, that a driver appeared 'intoxicated.'" The trial in this case occurred prior to Jones, on July 26, 2019 and October 4, 2019.

was a contributing factor in the impairment" and noted Kaneshiro's unsafe driving.

On this record, we cannot conclude that the admission of the MRO responses was harmless beyond a reasonable doubt, where Officer Gazelle's opinion that Kaneshiro was "impaired" was based in part on Kaneshiro's SFST performance, and where the MRO questions are specifically designed to "'rule out' other reasons, besides intoxication, for poor performance on the SFST." See Skapinok, 151 Hawaiʻi at 172, 510 P.3d at 601; Baker, 147 Hawaiʻi at 435, 465 P.3d at 882; cf. State v. Uchima, 147 Hawaiʻi 64, 84, 464 P.3d 852, 872 (2020) (finding that the defendant suffered no prejudice from the admission of the MRO questions, where the district court specifically stated that the questions "would have no probative value, no inculpatory or exculpatory value" in the trial part of the proceeding) (emphasis added).

Given our disposition, it is not necessary to address Kaneshiro's remaining contention.

For the foregoing reasons, the (1) October 4, 2019 "Notice of Entry of Judgment and/or Order and Plea/Judgment," (2) October 4, 2019 "Amended Notice of Entry of Judgment and/or Order and Plea/Judgment," and (3) September 11, 2020 "Notice of Entry of Judgment and/or Order and Plea/Judgment," all entered by the District Court of the First Circuit, are vacated, and this matter is remanded for a new trial consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, June 9, 2023.

On the briefs:

Alen M. Kaneshiro
for Defendant-Appellant.

Brian R. Vincent
Deputy Prosecuting Attorney
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge