897 P.2d 959

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Ronald GOMES, Defendant–Appellant.**

No. 16476.

Supreme Court of Hawai'i.

June 9, 1995.

Anthony L. Ranken, on the briefs, Wailuku, for defendant-appellant.

Mark R. Simonds, Deputy Pros. Atty., on the briefs, Wailuku, for plaintiff-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

We granted Ronald Gomes's application for certiorari after the Intermediate Court of Appeals (ICA) affirmed the order of the second circuit court denying Gomes's Hawai'i Rules of Penal Procedure (HRPP) Rule 32(d) motion to withdraw his *nolo contendere* plea (Motion).[1] Based on our review of the record, we vacate and order that it be depublished.

## I.  FACTS

Gomes was charged by complaint with Sexual Assault in the First Degree, Hawai'i Revised Statutes (HRS) § 707–730 (Supp. 1992), and Murder in the Second Degree, HRS § 707–701.5 (Supp.1992), allegedly committed on November 24, 1991, on the island of Maui. At the time of the alleged offense, Gomes was in the company of Lucio Gonzalez and James Houdasheldt.[2]

After initially pleading not guilty, Gomes changed his plea on the murder charge to *nolo contendere*, or "no contest," on June 26, 1992.[3] In exchange for the change of plea, the prosecution dropped the sexual assault charge.

The change of plea hearing was conducted in accordance with Rule 11(c), HRPP (1988); however, Gomes did not explicitly admit guilt nor did he furnish the court with his version of the incident. Instead, and at the court's request, the prosecutor summarized the particulars of the offense. The essence of the prosecutor's description was that Gomes and Gonzalez both sexually assaulted the victim at knife point. Gomes then purportedly restrained the victim while Gonzalez stabbed her repeatedly. After the prosecution's description of the incident, the court asked Gomes whether he would stipulate to the facts as described by the prosecution. Defense counsel stated, "we don't stipulate that every particular matter that the [prosecution] just recited is absolutely accurate, but Mr. Gomes and I have reviewed the evidence against him, . . . and based on our review of the evidence we are willing to enter the stipulation." Furthermore, Gomes signed a "No Contest" form indicating that "[f]or the purpose of this Court's acceptance of this plea of no contest, the Defendant stipulates that there is a factual basis for the charge." Subsequently, the court set the date of sentencing for August 26, 1992.

The Motion, which was filed on August 24, 1992,[4] and heard on August 26, was predicated on an "Emphatic Statement" (Statement)

1. HRPP Rule 32(d) provides that "[a] motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his [or her] plea."

2. It appears that Gonzalez was charged with the same offenses as Gomes. Gonzalez pleaded guilty to the murder charge and was sentenced on the same day as Gomes.

3. *Nolo contendere,* or "no contest," is defined as a "[t]ype of plea which may be entered with leave of court to a criminal complaint or indictment by which the defendant does not admit or deny the charges, though a fine or sentence may be imposed pursuant to it. The principal difference between a plea of guilty and a plea of *nolo contendere* is that the latter may not be used against the defendant in a civil action based upon the same acts.... Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." *Black's Law Dictionary* 1048 (6th ed.1990) (citations omitted).

4. Counsel for Gomes notified the prosecutor's office by phone, on August 20, 1994, of Gomes's intent to file the motion to withdraw his no contest plea.

allegedly signed by Gonzalez on August 12, 1992. The Statement exculpates Gomes from complicity in the offenses. The Statement specifically relates that: (1) Gonzalez forced the victim to engage in a sex act with Gomes at knife point; (2) Gomes had not intended to engage in the act and tried to dissuade Gonzalez from using the knife; (3) Gomes did not assist Gonzalez in killing the victim; (4) Gonzalez performed all the acts necessary to kill the victim, without assistance from anyone else; and (5) Houdasheldt assisted Gonzalez in disposing of the body.[5]

At the hearing on the Motion, the court received the Statement and heard testimony from Gonzalez, Gomes, and T.J. Davis, a fellow inmate of Gomes and Gonzalez at the Maui Community Correctional Center (MCCC), who typed the Statement.

Davis's testimony included the following statements: (1) he merely acted as a scribe in preparing the Statement; (2) Gonzalez and Gomes, together, brought him a draft of the Statement on a legal pad and asked him to type it;[6] (3) he typed the Statement and returned it to Gomes and Gonzalez; (4) he was not certain whether he saw Gonzalez sign the Statement; (5) he suffers from a "bipolar disorder" that can affect his reading comprehension; and (6) he relied on Gonzalez to proofread the Statement.

Gonzalez's testimony included the following statements: (1) English is not his first language; (2) nevertheless, he can read, write, and comprehend the language, albeit with some difficulty; (3) the statement he gave to the police was only partly true; (4) he wrote the draft on the same day that he gave it to Davis to type; (5) the Statement was voluntary, and he did not confer with Gomes before he wrote the draft; (6) he was alone when he delivered the draft to Davis

and when he received the Statement from him; (7) the Statement was true; and (8) he signed the Statement in the cellblock and later gave a copy to his attorney and to Gomes.

Gomes's testimony included the following statements: (1) he was innocent; (2) he was scared when the police interviewed him; (3) as a result of this fear, parts of his statement to the police, while not lies, were inaccurate; (4) he was not with Gonzalez when the latter delivered the draft to Davis; and (5) when Davis returned the typed Statement to Gonzalez, he (Gomes) was in the area but not in close proximity to Gonzalez.

At the conclusion of the hearing, the circuit court initially stated that its decision would have been simplified if the prosecution had produced evidence of substantial prejudice. Acknowledging that no such evidence was presented, the court then asked the prosecutor to submit an affidavit indicating any prejudice.[7] The court also summarized Davis's testimony: (1) while in MCCC, Davis received a draft of the Statement from both Gomes and Gonzalez, put the draft in typewritten form and gave the typewritten form to both men; and (2) Davis did not know who actually authored or signed the Statement. Finally, the court observed that this testimony was "at variance with" that of Gomes and Gonzalez. Consequently, the court opined that it believed the Statement to be "questionable" in both origination and purpose.

The court did not make a specific finding as to who authored the Statement. However, in its extensive findings of fact (FOF) and conclusions of law (COL), the court observed that:

> [1] Applying the first of three (3) inquiries to Defendant Gomes's motion to with-

---

5. A few days after the November 24, 1991 offense, Gonzalez told the police that, using a knife, he had forced the victim to have sexual intercourse with him and to perform oral sex on Gomes. Gonzalez also indicated that he stabbed the victim and, while Gomes was holding her down, cut her throat. Finally, Gonzalez claimed that Gomes helped him dispose of the body.

6. Davis later became confused, however, as to whether Gonzalez and Gomes came to see him together.

7. The affidavit was subsequently filed on September 30, 1992, and judgment was entered on October 5, 1992. However, the circuit court had already denied Gomes's Motion on August 27, 1992 and had sentenced him to life imprisonment with the possibility of parole the following day.

draw his plea of no contest, the issue is whether [Gomes] presented fair and just reasons for his request.

Analysis of the record in light of the applicable case law indicates that [Gomes] has failed to present *any* reason for his requested withdrawal, let alone a fair and just reason....

[Gomes] has failed to allege or produce a scintilla of evidence of force, mistake, misapprehension, fear, inadvertence, ignorance of right, or misunderstanding of the consequences of his plea of no contest....

[2]  The second of the three (3) inquiries ... entails the examination of the grounds for the motion, and a determination as to whether [Gomes] has established their plausibility and legitimacy.  Here [Gomes's] grounds consisted of an allegation of innocence and the production of an "Emphatic Statement" by co-defendant Gonzalez which tended to exculpate him.

Regarding the allegation of innocence, [Gomes] delayed his claim till the eve of sentencing.  [He] waited over eight (8) months from his initial appearance in District Court and two (2) months from his factual stipulation on June 26, 1992....  Common sense prevents crediting [Gomes's] claim [that unspecified fear motivated his silence] with any measure of plausibility or legitimacy[;]  ... it would be patently unreasonable for [Gomes] to rest upon his belief in his innocence and fail to test it against reality.

As to co-defendant Gonzalez's "Emphatic Statement", belief in its legitimacy would create insurmountable logical inconsistencies.  To find Gonzalez's "Emphatic Statement" valid one must disbelieve all earlier testimony and statements and assume that for a substantial period of time [Gomes] and [Gonzalez] conspired to protect Houdasheldt.  The timing in the production of the "Emphatic Statement" also renders it suspect; the factual allegations contained in the statement cannot be construed as newly discovered evidence only newly presented.  Yet, as with his claim of innocence, [Gomes] delayed the expression of the scenario contained in the "Emphatic Statement" till the eleventh hour.

Finally, the testimony provided at the hearing sheds [sic] further doubt on the legitimacy of the "Emphatic Statement".  The testimony of T.J. Davis was especially significant in two (2) crucial areas: 1) it established that the authorship of the "Emphatic Statement" could not be verified; and 2) it suggested the strong likelihood of collusion between [Gomes] and [Gonzalez] in the production of the document.

Analysis of the grounds put forth by [Gomes] in support of his motion to withdraw his plea of no contest show them to be both implausible and illegitimate.  The delay in [Gomes's] claim of innocence, the purported reasons for the delay, and the overwhelming opposing evidence, including Gomes's own statement and stipulation, all contravene that claim's plausibility and legitimacy.  Likewise, the timing, factual assertions, and questionable origin of co-defendant Gonzalez's "Emphatic Statement" militate against its plausibility and legitimacy....

[3]  The third and final inquiry ... involves a determination of whether the State relied upon the plea to its substantial prejudice....  [Although] the State never argued or demonstrated any actual prejudice, let alone prejudice arising to a substantial level ..., [the] absence of prejudice nullifies the issue.  In other words, the lack of prejudice to the State cannot support or resurrect an otherwise meritless motion by the Defendant.  [Citations omitted.]

The ICA affirmed, holding that although the circuit court applied the wrong analysis, it did not abuse its discretion in denying Gomes's motion:

The [circuit] court applied a "trifurcated" examination of the evidence presented below for the purpose of determining the propriety of allowing the withdrawal of [Gomes's] *nolo contendere* plea.  Thus, the court considered "1) whether the defendant presented fair and just reasons for his request;  2) whether the defendant established plausible and legitimate grounds for the withdrawal;  and 3) whether the

State relied upon the plea to its substantial prejudice."

We do not agree with the lower court's trifurcated examination. Rather, it is our view that the true task of the lower court in determining how it should exercise its discretion in this type of case is to *examine the plausibility and legitimacy of defendant's reasons for seeking to withdraw the plea and, depending on its factual determination as to those matters, conclude whether together they present a fair and just reason for allowing the plea withdrawal. Thereafter the court may consider, if necessary, the question of prejudice to the State.*

*State v. Gomes,* No. 16476, slip op. at 6–7 (Haw.App. Apr. 15, 1994) (latter emphasis added).

## II. *STANDARD OF REVIEW*

We recently reiterated the applicable standard of review for appeals from the denial of a HRPP Rule 32(d) motion made prior to the imposition of sentence:

[t]his court has observed that a liberal approach is to be taken when a motion to withdraw a plea is made under HRPP 32(d) before sentence is imposed. The court should grant the motion if the defendant has presented a fair and just reason for his request and the State has not relied upon the plea to its substantial prejudice.... [T]he court's denial of the request is reviewed for abuse of discretion.

An abuse of discretion occurs if the trial court has "clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant."

*State v. Adams,* 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994) (citations omitted).

8. Gomes does not challenge the voluntariness of his no contest plea. Consequently, the prosecution's argument that the plea was voluntarily and knowingly made is irrelevant. The inquiry here is whether Gomes has otherwise presented a "fair and just reason" for withdrawing the plea. *See Adams,* 76 Hawai'i at 411, 879 P.2d at 516.

## III. *DISCUSSION*

Gomes argues that the circuit court erred in denying the Motion because:

(1) he never admitted guilt, but always maintained his innocence;

(2) when he entered his *nolo contendere* plea he thought Houdasheldt and Gonzalez would be testifying against him;

(3) the seriousness of the offense favors the withdrawal of the plea;

(4) the [prosecution] would suffer no prejudice; and

(5) the court should not have determined whether the Statement had merit.

■ The prosecution contends, on the other hand: that Gomes's *nolo contendere* plea was knowingly and voluntarily made;[8] that Gomes waited too long to make the Motion; that the Statement did not merit serious consideration; and, that the prosecution would be prejudiced if Gomes were allowed to withdraw the plea now.

### A.

We agree with the ICA's critique of the circuit court's trifurcated analysis. The ICA also correctly identified *State v. Jim,* 58 Haw. 574, 574 P.2d 521 (1978), as the leading case in this jurisdiction regarding withdrawal of a defendant's guilty or no contest plea. In *Jim,* this court held that the trial court may hold an evidentiary hearing to determine the plausibility and legitimacy of a defendant's reasons for requesting withdrawal of his or her plea. *Id.* at 579, 574 P.2d at 524; *see also State v. Costa,* 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982) ("[t]he defendant has the burden of establishing plausible and legitimate grounds for the withdrawal").[9] However, the ICA erroneously deferred to the circuit court's assessment of Gomes's reasons for withdrawing his plea. *See Gomes,* slip op. at 6, 11–12 (citing, respectively, *State v. Smith,* 61 Haw. 522, 606 P.2d 86 (1980),

9. The appellant in *Costa* sought withdrawal based upon the prosecution's alleged breach of the plea agreement. The court found that the prosecution did not breach the agreement; therefore, "Appellant has not presented arguments which justify the withdrawal of the guilty plea." 64 Haw. at 567, 644 P.2d at 1332.

and *State v. Tripp*, 71 Haw. 479, 795 P.2d 280 (1990)).

■ An evidentiary hearing in conjunction with a defendant's HRPP Rule 32(d) motion facilitates the examination of two fundamental bases of demonstrating "fair and just reasons" for granting withdrawal of a plea: (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea. *See Jim, supra.*

The defendant in *Jim* sought withdrawal of his plea on both of the grounds recited above. First, he claimed to be unaware of the fact that theft in the first degree was a felony and not a misdemeanor. Second, an eyewitness was now purportedly willing to testify. 58 Haw. at 577–78, 574 P.2d at 523. With respect to Jim's first purported reason:

> he was fully and clearly advised by his attorney and by the court of the maximum penalties which may be imposed for the crime of theft in the first degree. He was not entitled to be informed by the court of all the possible collateral consequences of a guilty plea. [He] . . . does not claim inadequate legal representation, and he concedes that the trial court did all that the law required of it to ensure that his guilty plea was voluntarily, knowingly, and intelligently made.

*Id.* When Jim pled guilty, he specifically admitted that he committed the crime.

Concerning Jim's second purported reason, there was no evidence that the "new" testimony was unavailable at the time the plea was entered. *Id.* at 578–79, 574 P.2d at 524. The only evidence suggesting that availability of the testimony was a consideration in his decision to plead guilty was his own statement to that effect. *Id.* Because the trial court "did not believe the defendant" it "found his reasons for withdrawal to be without sufficient merit." *Id.* at 579, 574 P.2d at 524.

■ Notwithstanding this court's holding that the circuit court in *Jim* did not abuse its discretion in denying the defendant's motion to withdraw guilty plea, we have never held that the defendant's actual guilt or innocence is an issue for the judge to decide in this type of evidentiary hearing. Accordingly, we now adopt the relevant analysis rejecting such a contention in *United States v. Morgan*, 567 F.2d 479 (D.C.Cir.1977).[10] *Cf. United States v. Schubert*, 728 F.2d 1364, 1365–66 (11th Cir.1984) (holding that it was improper for the district court to decide the merits of the defendant's entrapment defense, but acknowledging the propriety of deciding whether the factual basis of the asserted defense was accurate).[11]

**10.** In *Morgan*, the defendant initially intended to rely on a defense of insanity based on a certain hospital report. The defendant instead pled guilty after the hospital psychiatrist changed his opinion and because of the impending deadline for eligibility under the Federal Youth Corrections Act. *See* 18 U.S.C. §§ 5005–26 (1976) (providing for indeterminate sentencing to special rehabilitative programs for periods that may be considerably shorter than an adult sentence). However, before sentencing, the defendant moved to withdraw his plea after learning of a third report, which was prepared by a different medical facility and concluded that he was mentally ill. The lower court denied the defendant's motion but, after several appeals, the United States Court of Appeals for the District of Columbia Circuit ultimately reversed and remanded for trial. *Morgan*, 567 F.2d at 493 (concluding that the lower court abused its discretion, and citing *Gearhart v. United States*, 272 F.2d 499, 502 (D.C.Cir.1959), for the proposition that "the District Court should not attempt to decide the merits of the proffered defense, thus determining the guilt or innocence of the defendant").

**11.** In *Schubert*, the defendant abandoned his intended defense of entrapment after a suspected government informant voluntarily appeared at Schubert's attorney's office on the day of trial and signed a sworn statement denying that he was an informant. On the day of sentencing, Schubert's attorney reviewed the presentence investigation report and discovered that the sworn statement was probably a lie. He promptly informed the court that he wished to file a motion to withdraw the guilty plea, and did so one week later. The district court held that the evidence nevertheless failed to make out an arguable case of entrapment because predisposition to commit the crime was obviously present, and accordingly denied the motion. The United States Court of Appeals for the Eleventh Circuit reversed, holding that "[t]he question of whether Schubert had a proper entrapment defense should have been left for resolution at trial." 728 F.2d at 1367.

The trial court in *Schubert* would have acted within its discretion had it denied the defendant's motion pursuant to a finding that the alleged informant did not lie in his sworn statement—i.e., that he was not a governmental infor-

■ Unlike the circumstances presented in *Jim*, there is additional testimony to consider in the instant case beyond Gomes's own representations. Although inconsistencies in the testimony of Davis, Gonzalez, and Gomes create some doubt regarding the veracity of the Statement, we nevertheless hold that the circuit court abused its discretion in denying the motion because its findings and conclusions are inconsistent with applicable law.

The circuit court's finding that Gomes did not present any reason to justify his withdrawal was based, in part, on its belief that the Statement was "questionable" in its origination and purpose. However, the resolution of this question lies outside the judge's province; in the circumstances of this case, the question is a matter for the jury to decide.

The circuit court also found it unreasonable for Gomes to believe in his own innocence and nevertheless plead no contest; therefore, the court discredited Gomes's reason for seeking to withdraw his plea. Contrary to the circuit court's views on this matter, however, "[a] guilty plea [or no contest plea] is very typically entered for the simple 'tactical' reason that the jury is unlikely to credit the defendant's theory or story.... Indeed, so long as a factual basis for the plea exists, ... a court may accept such a 'tactical' plea even from a defendant who continues to assert his innocence." *United States v. Barker*, 514 F.2d 208, 221 (D.C.Cir.), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). In exchange for his plea, the prosecution dropped one of the charges against Gomes. Moreover, the record reflects that Gomes original-

ly accepted the plea agreement because Gonzalez and Houdasheldt were going to contradict his testimony. However, on the basis of the Statement, it now appears that Gonzalez could corroborate Gomes's testimony.

Analyzing Gomes's asserted reason for seeking withdrawal against the background provided by earlier proceedings, *see Jim*, 58 Haw. at 579, 574 P.2d at 524, we observe that Gomes pled not guilty when he appeared in court for the first time on December 18, 1991. Notwithstanding his willingness to stipulate to a factual basis for the charges, he never explicitly admitted that he committed the crimes for which he was charged and convicted.[12] *Cf. State v. Smith*, 61 Haw. 522, 606 P.2d 86 (1980) (reversing denial of HRPP Rule 32(d) motion where nineteen-year-old defendant never expressly admitted that he committed the offenses charged). Although he changed his plea to *nolo contendere* on June 26, 1992, Gomes promptly advised the prosecutor and the court after discovering that Gonzalez had changed his account of Gomes's role in the crime. Gomes's written motion was filed just two weeks after receiving Gonzalez's Statement. *Compare Schubert*, 728 F.2d at 1367 (involving a delay of a little more than a month from entry of the plea),[13] *with Barker*, 514 F.2d at 223 (involving a delay of about eight months).

The defendants in *Barker* moved to withdraw their guilty pleas based on a purported defense of "national security." The defendants, who were the foot soldiers in the "Watergate Break-in," allegedly believed that their clandestine operation was a nation-

mant. *See also United States v. Barker*, 514 F.2d 208, 223 (D.C.Cir.) (observing that the defendants' claims in their motions for withdrawal of their pleas were "directly contrary to the representations made ... during the plea-taking procedure"), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). The circuit court's determination in the instant case that Gonzalez's purported change of testimony was "questionable"—i.e., not credible—is qualitatively different from a finding that Gonzalez had not, in fact, changed his testimony. *See, e.g., Schubert, supra.* Nor does Gomes's current claim of innocence directly contradict his stipulation to a factual basis for the charge of second-degree murder during the plea-taking procedure. *See e.g., Barker, supra; infra* note 12 and accompanying text. Based on the evidence presented at the HRPP

Rule 32(d) hearing and the background provided by earlier proceedings, we hold that the circuit court's implicit conclusion that no reasonable juror could believe Gonzalez's change of testimony clearly exceeded the bounds of reason.

12. The circuit court apparently failed to appreciate the subtle distinction between a plea of guilty and a plea of no contest. Although the difference between these two pleas "is one of form rather than substance" for sentencing purposes, *see State v. Keahi*, 66 Haw. 364, 366, 662 P.2d 212, 214 (1983), they are not the same for purposes of an HRPP Rule 32(d) motion. *See supra* note 3 (defining *nolo contendere*).

13. *See* discussion of *Schubert, supra* note 11.

al security mission, authorized by a "governmental intelligence agency" to examine alleged financial ties between the Democratic Party and the Castro regime in Cuba. 514 F.2d at 211–12. The defendants also contended that the "intelligence agency" wished them to maintain their silence about the operation and forfeit their right to trial in the interest of national security. *Id.* at 212. Therefore, the defendants claimed that they pled guilty even though they did not have the "criminal intent" required for conviction (e.g., breaking into the Watergate in exchange for pay, or purely for political espionage purposes, rather than as part of their "lawful" duties as employees of a governmental intelligence agency). *Id.* However, the defendants' claims directly contradicted the representations they made to the judge during the plea-taking procedure—e.g., that they were never employed by the Central Intelligence Agency and that they were not pleading guilty for some reason of loyalty, coercion, or inducement. *Id.* at 223. Furthermore, granting withdrawal after the pleas were entered (in mid-testimony during a trial of unusual complexity) would have substantially prejudiced prosecutorial interests because: (1) the defendants were granted use immunity after entering their guilty pleas; (2) prospective jurors were presumably exposed to the highly publicized trial; and (3) there would have been numerous practical difficulties in reassembling the witnesses and evidence for a new trial. *Id.* Accordingly, the United States Court of Appeals for the District of Columbia Circuit held that the denial of the defendants' motion did not constitute an abuse of discretion; however, the court expressly refrained from deciding the legal merits of their claim. *Id.* at 226.

In this case, the circuit court may be correct in predicting that the conflicting testimony of Davis, Gonzalez, and Gomes will be insufficient to raise a reasonable doubt as to Gomes's guilt—especially when Gonzalez's and Gomes's various statements are compared with each other and their in-court testimony. Nevertheless, considering the totality of the circumstances and without attempting to perform the role of a juror, we hold that the court could not conclude, as a matter of law, that Gomes failed to present plausible and legitimate grounds for withdrawing his plea.

■ Furthermore, we now hold that a defendant is entitled to withdraw his or her *nolo contendere* plea before imposition of sentence where: (1) the defendant has never expressly admitted guilt; (2) the defendant advances a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate the defendant; (3) there has been no undue delay in moving to withdraw the plea; and (4) the prosecution has not otherwise met its burden of establishing that it relied on the plea to its substantial prejudice. *Cf. Adams,* 76 Hawai'i at 414–15, 879 P.2d at 519–20 (applying a more demanding standard of "manifest injustice" to Adams's postsentence motion to withdraw his no contest plea because the prosecutor breached the plea agreement).

■ As discussed above, the record in this case reveals that the three initial requirements have been met. The only remaining question is whether, at the time Gomes's Motion was denied, the prosecution had relied on Gomes's plea to its substantial prejudice.

### B.

To the extent that the prosecution argues that it would be substantially prejudiced if Gomes were allowed to withdraw his *nolo contendere* plea at this time, this contention is irrelevant to our consideration of the circuit court's decision to deny Gomes's HRPP Rule 32(d) motion on August 26, 1992. We observe that before the circuit court convicted Gomes, entered its judgment, and sentenced him, it had denied his HRPP Rule 32(d) motion notwithstanding an acknowledgement that "the [prosecution] never argued or demonstrated any . . . prejudice rising to a substantial level" as a result of its reliance on Gomes's plea. In fact, the prosecutor stated during the hearing on Gomes's Motion that "I'm not even asserting that it's substantial prejudice; I'm simply stating that it's an inconvenience. . . . The [prosecution] is basically hanging its hat on the other two grounds specified in *State v. Jim.*"

The circuit court concluded that the absence of substantial prejudice would not support or resurrect a defendant's pre-sentence motion to withdraw a guilty or no contest plea where no fair and just reason for withdrawal had been presented. This is a correct statement of the law. Nevertheless, the court invited the prosecution to supplement the record with an affidavit describing any prejudice caused by reliance on Gomes's plea, *see supra* note 7 and accompanying text, but then immediately rendered its oral decision before the affidavit was submitted. Accordingly, any evidence of prejudice was not part of the record when the court denied Gomes's Motion. Furthermore, notwithstanding the prosecution's contention in the affidavit that its principal witness, Houdasheldt, expressed a desire to move to an undetermined location, the supplemental affidavit does not affirmatively attest to his unavailability.

Given the fact that the prosecution failed to meet the requisite burden with respect to its claim of substantial prejudice, we hold that the circuit court abused its discretion in denying Gomes's presentence Motion. Although we recognize that the passage of time might make it even more difficult for the prosecution to locate Houdashelt now, Gomes should not be required to forfeit his fundamental right to a jury trial where (1) he has filed a timely HRPP Rule 32(d) motion, which (2) alleges changed circumstances and is accompanied by facts that—if believed by a reasonable juror—would exculpate him, and (3) he has never expressly admitted his guilt.

## IV. CONCLUSION

Based on the foregoing analysis, we hold that because Gomes has provided plausible and legitimate reasons to support the withdrawal of his *nolo contendere* plea and the prosecution has failed to show prejudice, the circuit court abused its discretion in denying his motion. Therefore, we vacate the judgment of conviction, remand to the circuit court for issuance of an order granting Gomes's HRPP Rule 32(d) motion to withdraw his *nolo contendere* plea, and order the ICA's decision depublished.