210 P.3d 3

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Rodney L. NICHOLSON, Defendant–Appellant.**

**No. 27555.**

Intermediate Court of Appeals of Hawai'i.

May 1, 2009.

Shawn A. Luiz, on the briefs, Honolulu, for Defendant–Appellant.

Deirdre Marie–Iha, Dorothy D. Sellers, Deputy Attorneys General, Department of the Attorney General, on the briefs, for Plaintiff–Appellee.

NAKAMURA, Presiding Judge, FUJISE, and LEONARD, JJ.

Opinion of the Court by NAKAMURA, J.

Defendant–Appellant Rodney L. Nicholson (Nicholson) appeals from the Judgment filed on September 19, 2005, in the Circuit Court of the First Circuit (circuit court). Plaintiff–Appellee State of Hawai'i (State) charged Nicholson by indictment with one count of first degree electronic enticement of a child, in violation of Hawaii Revised Statutes (HRS) § 707–756(1) (Supp.2003).[1] After being permitted to withdraw his first guilty plea, Nicholson again pleaded guilty. The circuit court denied Nicholson's motion to withdraw his second guilty plea, and the court sentenced Nicholson to five years of probation subject to a special condition that he serve one year of imprisonment.

On appeal, Nicholson argues that the circuit court erred in: 1) denying his motion to withdraw his second guilty plea; 2) denying his motion to dismiss the indictment; 3) concluding that Nicholson was not entrapped; and 4) violating his right of allocution by denying him full allocution at sentencing.[2] We affirm.

---

1. At the time of the charged offense, Hawaii Revised Statutes (HRS) § 707–756(1) (Supp. 2003) provided in relevant part:

    (1) Any person who, using a computer or any other electronic device:
    (a) Intentionally or knowingly communicates:
    ...
    (iii) With another person who represents that person to be under the age of eighteen years; and
    (b) With the intent to promote or facilitate the commission of a felony:
    ...
    (iii) That is an offense defined in section 846E–1;

    agrees to meet with the minor, or with another person who represents that person to be a minor under the age of eighteen years; and
    (c) Intentionally or knowingly travels to the agreed upon meeting place at the agreed upon meeting time;
    is guilty of electronic enticement of a child in the first degree.

2. The Honorable Marie N. Milks presided over Nicholson's motion to dismiss the indictment and the Honorable Steven S. Alm presided over the other matters at issue in this appeal.

### I.

At the time of the charged offense, Nicholson was 40 years old. The charge against Nicholson stemmed from his use of a computer to engage in sexually-explicit conversations over the internet, through chat rooms and instant messaging, with a person he believed was a 14–year–old girl named "Karen." Unbeknownst to Nicholson, "Karen" was actually a special agent for the Attorney General's Office named Chris Bradford, who specialized in undercover investigations of internet crimes against children. During their conversations, Nicholson electronically transmitted graphic photographs of people engaging in sexual activity, including one in which Nicholson said he was a participant. Nicholson's internet conversations with Karen culminated in his arranging to meet Karen at the Beretania Street Burger King restaurant so that they could go to Nicholson's home to engage in sexual activity. Nicholson was arrested by the police after he entered the Burger King at the pre-arranged date and time.

The underlying facts, as found by the circuit court in its "Findings of Fact, Conclusions of Law, and Order Denying Defendant Rodney Nicholson's Motion to Dismiss Indictment," are as follows:

1. On October 13, 2003, [Nicholson] began chatting on line via a computer Internet chat room with a person using the screen name "karenfunnpurty14" (hereinafter "Karen"). [Nicholson] was using the screen name "rod—michaels."

. . . .

2. After an initial greeting, [Nicholson] asked Karen whether she was looking for some fun and whether she liked to be kissed and licked. Shortly thereafter, [Nicholson] stated that he was 40 years old and Karen stated that she was 14 years old. Karen was actually Special Agent Christopher Bradford (hereinafter "Bradford") for the Department of the Attorney General assigned to the Hawaii Internet Crimes Against Children Task Force.

3. Even after Karen stated that she was only 14 years old, [Nicholson] continued questioning Karen as to whether she would be interested in having him perform oral sex on her. He then questioned whether Karen had ever touched a penis before and whether she liked it. Karen then talked about her young age and physical immaturity. [Nicholson] responded by stating that he thought girls her age were sexy and that he had sex with a young girl before. [Nicholson] then asked Karen whether she would be interested in meeting him that day. He knew of a place in Pearl City where they could be alone and they could "do it" by some trees or in his car. He stated that he would use a condom so that she wouldn't get pregnant. Karen stated that she could not meet him that day but maybe another day.

4. [Nicholson] and Karen continued to chat on line during October of 2003. They chatted on October 18th, 27th, 28th & 29th. During these chats [Nicholson] continued to tell Karen that he wanted to meet with her and have oral sex and sexual intercourse with her. He recommended a few places where they could have sex including a park, a shopping center parking lot, a hotel room, and his own home. Karen repeatedly told [Nicholson] that she was young. [Nicholson] asked what grade she was in and after being told that she was in 7th grade he asked whether she wanted to go to college someday. [Nicholson] on more than one occasion indicated that he knew that having sexual relations with Karen would get him into trouble.

5. Nevertheless, a definite meet was set up for October 30, 2003 at 6:30 p.m. at the Burger King on Beretania Street. [Nicholson] was going to take Karen to his home to have sexual intercourse and oral sex.

6. [Nicholson] showed up at the Beretania Street Burger King on October 30, 2003 at 6:30 p.m. and was arrested.

### II.

### A.

■ The circuit court did not abuse its discretion in denying Nicholson's second motion to withdraw his guilty plea. The circuit court permitted Nicholson to withdraw his

first guilty plea based on Nicholson's claim that he wanted to file a motion to suppress his electronic communications with Karen on the ground that they were unlawfully "intercepted" by the State. After Nicholson's suppression motion was denied, he pleaded guilty a second time, without a plea agreement with the State or a reservation of the right to appeal the circuit court's pretrial rulings.

Prior to sentencing, Nicholson moved to withdraw his second guilty plea on the ground that he had not been aware of a potentially meritorious defense. According to Nicholson, this potentially meritorious defense was the State's inability to prove that he "travel[ed] to the agreed upon meeting place" as required by HRS § 707–756(1)(c). Nicholson contended that the agreed upon meeting place was not simply Burger King, but the back tables in Burger King, and that he had only gone to the front counter of Burger King and not the back tables before he was arrested.

In denying Nicholson's motion, the circuit court rejected Nicholson's contention that he had a potentially meritorious defense. Based upon its review of the record, the circuit court found that the agreed upon meeting place was the Burger King, and not a particular area within the Burger King. Accordingly, the circuit court ruled that Nicholson did not provide a fair and just reason for withdrawing his second guilty plea.

██ "A defendant does not have an absolute right to withdraw his guilty plea." *State v. Jim*, 58 Haw. 574, 575, 574 P.2d 521, 522 (1978). To withdraw a guilty plea before sentence is imposed, the defendant must show "a fair and just reason for his request." *State v. Gomes*, 79 Hawai'i 32, 36, 897 P.2d 959, 963 (1995). The two fundamental bases for showing a fair and just reason for withdrawing a guilty plea are: (1) the defendant did not knowingly, intelligently, or voluntarily waive his or her rights in pleading guilty; or 2) there are changed circumstances or new information which justify the withdrawal. *Id.* at 37, 897 P.2d at 964.

██ The defendant has the burden of establishing plausible and legitimate reasons for withdrawal of a guilty plea. *State v. Costa*, 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982). The trial court may weigh and determine the plausibility and legitimacy of the defendant's proffered reasons and, in exercise of its sound discretion, may deny the motion for withdrawal where it determines that no plausible and legitimate reason exists for allowing the motion. *Jim*, 58 Haw. at 576–77, 574 P.2d at 523. The trial court's decision will be upheld absent an abuse of discretion. *Id.* at 577, 574 P.2d at 523.

Based on our review of the record, we concur with the circuit court that the agreed upon meeting place was the Burger King itself, and not a particular area or specific tables within the Burger King. The transcripts of the conversations between Nicholson and Karen provide compelling evidence to support the circuit court's determination. Thus, the circuit court did not err in rejecting Nicholson's proffered reason for requesting the withdrawal of his second guilty plea and in concluding that Nicholson had not demonstrated a fair and just reason for his request.

### B.

Nicholson argues that the circuit court erred in denying his motion to dismiss the indictment because: 1) the evidence presented to the grand jury failed to establish probable cause for the indictment; and 2) the indictment failed to adequately state an offense. We disagree.

### 1.

██ Nicholson contends that the grand jury evidence was insufficient because the charge requires proof that he was communicating with a child and that no actual child was involved in his internet communications. He further contends that there was no evidence that he went to a table at the rear of Burger King, which he claims was the agreed upon meeting place.

██ Contrary to Nicholson's contention, the State was not required to prove that Nicholson engaged in communication with an actual child. Nicholson was charged under the provision of HRS § 707–756(1)(a)(iii) that

required proof that Nicholson "intentionally or knowingly communicate[d] ... [w]ith another person who represents that person to be under the age of eighteen years." Here, the State presented evidence to the grand jury that the person communicating with Nicholson represented to Nicholson that the person was a 14–year–old girl named Karen.[3]

As previously noted, the record shows that the agreed upon meeting place was the Burger King, and not a specific table within the Burger King. Thus, evidence before the grand jury that Nicholson arrived at the Burger King and was arrested was sufficient to establish probable cause regarding the meeting-place element.

### 2.

We reject Nicholson's claim that the indictment failed to adequately state an offense because it did not specify which offense defined in HRS § 846E–1 he intended to commit. Ordinarily, an indictment which tracks the language of the statute is sufficient. *State v. Cordeiro,* 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002); *State v. Silva,* 67 Haw. 581, 585, 698 P.2d 293, 296 (1985); *State v. Robins,* 66 Haw. 312, 314, 660 P.2d 39, 41 (1983). The indictment in this case tracked the language of HRS § 707–756(1).

In addition, in *Robins,* which involved the charge of burglary, the Hawai'i Supreme Court held that if a crime requires only an intent to commit an underlying offense, the underlying offense itself need not be specified in the indictment:

[T]he crime intended to be committed on the premises does not have to be committed in order to make the act of entering or remaining the crime of burglary, only the intent must be formed. Intent, of course, is subjective, although it is usually proved by inference from the acts of the accused. Thus, intentionally entering or intentionally remaining unlawfully upon the described premises with the intent to commit any crime against a person or property rights

constitutes burglary and, therefore, *it cannot logically be said that specifying the particular crime intended to be committed is, under our statutes, an essential element which must be alleged in order to charge the crime of burglary.*

*Robins,* 66 Haw. at 314–15, 660 P.2d at 41 (emphasis added).

Here, it was not necessary for Nicholson to actually commit one of the felony offenses defined in HRS § 846E–1 in order to violate the prohibition against the electronic enticement of a child set forth in HRS § 707–756(1). Instead, it was only necessary that Nicholson act "[w]ith the intent to promote or facilitate the commission of a felony ... offense defined in [HRS] section 846E–1." HRS § 707–756(1)(b)(iii). Thus, under *Robins,* the State was not required to specify in the indictment which HRS § 846E–1 felony offense Nicholson intended to promote or facilitate.

### C.

Nicholson waived any claim that he was entrapped. A valid and unconditional guilty plea precludes a defendant from later asserting non-jurisdictional claims. *State v. Morin,* 71 Haw. 159, 162, 785 P.2d 1316, 1318 (1990). This includes the claim of entrapment. *Smith v. United States,* 447 F.2d 487, 488 (5th Cir.1971); *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir.2002). Here, Nicholson entered his second guilty plea without reserving the right to appeal any of the circuit court's pretrial rulings.

In addition, Nicholson also waived his entrapment claim by failing to raise it in the circuit court. Nicholson erroneously suggests that he raised an entrapment claim in connection with his motion to suppress evidence. The motion to suppress was based on a claim that the undercover officer's "interception" of Nicholson's communications with the officer was unlawful, and the motion did

---

**3.** Nicholson's mistake-of-fact claim also misses the mark. As noted, HRS § 707–756(1)(a)(iii) is satisfied by proof that Nicholson intentionally or knowingly communicated with a person who represents himself or herself to be less than eighteen years old. Thus, Nicholson's mistaken belief that person with whom he was communicating was a 14–year–old girl did not "negative[ ] the state of mind required to establish an element of the offense," a condition that Nicholson would need to satisfy to assert the mistake-of-fact defense under HRS § 702–218(1) (1993).

486

not include a claim regarding entrapment. In its order denying the suppression motion, the circuit court noted that "after a review of the communications, there was no entrapment by Special Agent Bradford." However, this comment was not prompted by any argument raised by Nicholson and thus Nicholson did not preserve an entrapment claim for appeal. *State v. Moses*, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003) (stating that "[a]s a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal"); *State v. Ildefonso*, 72 Haw. 573, 584, 827 P.2d 648, 655 (1992) (concluding that defendant waived argument by not raising it at trial).

Moreover, even if not waived, Nicholson's entrapment claim is without merit. Entrapment is an affirmative defense set forth in HRS § 702–237 (1993). HRS § 702–237(1)(b) requires, in relevant part, that a defendant must show that a law enforcement officer:

> [e]mployed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

Entrapment is evaluated based on an objective inquiry. *State v. Anderson*, 58 Haw. 479, 483–84, 572 P.2d 159, 162 (1977). "The main concern is whether the conduct of the police or other law enforcement officials was so extreme that it created a substantial risk that persons not ready to commit the offense alleged would be persuaded or induced to commit it." *Id.* at 484, 572 P.2d at 162.

The transcripts of Nicholson's conversations with Karen provide convincing evidence that Nicholson was not entrapped. It was Nicholson, not the law enforcement officer, who initiated the contact as well as the sexual aspects of the conversations. It was Nicholson who, after learning that Karen was 14–years–old, repeatedly asked if she would engage in oral sex and sexual intercourse with him and sought to set up a meeting. Karen repeatedly expressed hesitation and gave Nicholson opportunities to back out of the illicit arrangements proposed by Nicholson.

D.

We reject Nicholson's claim that the circuit court violated his right of allocution. Under Hawai'i law, a defendant is entitled to a fair opportunity to speak before being sentenced. HRS § 706–604(1) (1993); *State v. Carvalho*, 90 Hawai'i 280, 285–86, 978 P.2d 718, 723–24 (1999).

The record shows that prior to imposing sentence, the circuit court gave Nicholson the opportunity to speak and that Nicholson made an extensive statement to the court. Nicholson ended his allocation by telling the circuit court, "[A]nd that's basically all I have to say, sir." In response, the circuit court informed Nicholson that it had "a hard time believing much of what you are saying," and the court proceeded to explain the reasons for its disbelief. During the circuit court's comments, which were a prelude to its imposition of sentence, Nicholson interrupted the court and asked, "Sir, may I say something else, please?" The circuit court declined Nicholson's request, stating, "You've had your shot, Mr. Nicholson."

Given these circumstances, we conclude that the circuit court did not deny Nicholson his right of allocution. Nicholson was provided with a fair opportunity to speak before sentencing. The circuit court did not err in its refusal to afford Nicholson a second allocution in response to the court's comments.

III.

The circuit court's Judgment is affirmed.