**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000439**
**24-AUG-2020**
**08:08 AM**

NO. CAAP-19-0000439

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
THEO PEDRO, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(CASE NO. 2FFC-18-0000252(4))

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

Defendant-Appellant Theo Pedro (**Pedro**) appeals from the Judgment; Conviction and Sentence; Notice of Entry (**Judgment**), entered on May 15, 2019, in the Family Court of the Second Circuit (**Family Court**).[1] After pleading no contest, Pedro was convicted of four counts of Sexual Assault in the Second Degree, in violation of Hawaii Revised Statutes (**HRS**) § 707-730(1)(a) (2014),[2] and sentenced to ten years of imprisonment on each count, to be served concurrently, with credit for time served.

Prior to sentencing, Pedro filed a motion to withdraw his no contest plea. The Circuit Court heard the motion and orally denied it on May 10, 2019. The Circuit Court entered its

---

[1] The Honorable Richard T. Bissen, Jr. presided.

[2] HRS § 707-730(1)(a) provides:

(1) A person commits the offense of sexual assault in the second degree if:

(a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

written "Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion to Withdraw No Contest Plea" on June 18, 2019.

On appeal, Pedro contends that the Circuit Court abused its discretion in: (1) denying Pedro's motion to withdraw his no contest plea prior to sentencing; and (2) sentencing Pedro to the "open" ten-year term of imprisonment. In connection with his first point of error, Pedro challenges the Circuit Court's Findings of Fact (**FOF**) Nos. 2, 4, 5, and 6, and Conclusions of Law (**COL**) Nos. 12 and 13.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we resolve Pedro's contentions as follows.

(1) "Hawaiʻi law regarding plea withdrawals is governed by [Hawaiʻi Rules of Penal Procedure (**HRPP**)] Rule 32(d) (2012) and case law construing the rule." State v. Sanney, 141 Hawaiʻi 14, 24, 404 P.3d 280, 290 (2017). HRPP Rule 32(d) provides, in relevant part:

> (d) *Withdrawal of Plea*. A motion to withdraw a plea of guilty or of nolo contendere may be made before sentence is imposed or imposition of sentence is suspended; provided that, to correct manifest injustice the court, upon a party's motion submitted no later than ten (10) days after imposition of sentence, shall set aside the judgment of conviction and permit the defendant to withdraw the plea.

Under Rule 32(d), a defendant does not have an absolute right to withdraw his plea of guilty or no contest. See State v. Krstoth, 138 Hawaiʻi 268, 274, 378 P.3d 984, 990 (2016); State v. Smith, 61 Haw. 522, 523, 606 P.2d 86, 88 (1980). However, "a liberal approach is to be taken when a motion to withdraw a plea is made under [Rule] 32(d) before sentence is imposed." State v. Nguyen, 81 Hawaiʻi 279, 286, 916 P.2d 689, 696 (1996) (quoting State v. Adams, 76 Hawaiʻi 408, 411, 879 P.2d 513, 516 (1994)).

The court should grant such a motion before sentencing "if the defendant has presented a fair and just reason for his [or her] request and the State has not relied upon the plea to its substantial prejudice[.]" State v. Gomes, 79 Hawaiʻi 32, 36, 897 P.2d 959, 963 (1995) (quoting Adams, 76 Hawaiʻi at 411, 879 P.2d at 516); see also State v. Guity, 144 Hawaiʻi 557, 561, 445

2

P.3d 138, 142 (2019) ("After entry of a plea of guilty or [no contest] and before sentence, the court should allow the defendant to withdraw the plea for <u>any</u> fair and just reason." (quoting <u>Sanney</u>, 141 Hawaiʻi at 22, 404 P.3d at 288)).  There are, in turn, "two fundamental bases of demonstrating 'fair and just reasons' for granting withdrawal of a plea:  (1) the defendant did not knowingly, intelligently or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea."[3/]  <u>Gomes</u>, 79 Hawaiʻi at 37, 897 P.2d at 964 (citing <u>State v. Jim</u>, 58 Haw. 574, 574 P.2d 521 (1978)).  Under either of the <u>Gomes</u> bases, "[t]he defendant has the burden of establishing plausible and legitimate grounds for the withdrawal."  <u>Id.</u> at 36, 897 P.2d at 963 (quoting <u>State v. Costa</u>, 64 Haw. 564, 565, 644 P.2d 1329, 1331 (1982)).

When a trial court denies a motion to withdraw a plea, "the trial court's determination will not be disturbed on appeal unless abuse of discretion is clearly shown."  <u>Nguyen</u>, 81 Hawaiʻi at 286, 916 P.2d at 696 (citing <u>Smith</u>, 61 Haw. at 523, 606 P.2d at 88).  "The burden of establishing abuse of discretion is on appellant and a strong showing is required to establish it."  <u>Id.</u> at 286, 916 P.2d at 696 (quoting <u>State v. Faulkner</u>, 1 Haw. App. 651, 654, 624 P.2d 940, 943 (1981)).  An abuse of discretion occurs "only if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  <u>Id.</u> at 286-87, 916 P.2d at 696-97 (citing <u>State v. Merino</u>, 81 Hawaiʻi 198, 211, 915 P.2d 672, 685 (1996)).

Pedro contends that he met his burden to withdraw his no contest plea because "the record supports [his] version of events," which is that "he did not understand his charges, he did not receive his copy of the discovery until post change of plea and there was an alleged complaining witness recantation that was not investigated."

Pedro's assertion that he did not understand the charges against him appears to raise a claim under the first <u>Gomes</u> basis — that he did not knowingly, intelligently or

---

[3/]     We refer to these two bases as the "<u>Gomes</u> bases."

voluntarily waive his rights.  In this regard, Pedro challenges FOF Nos. 2 and 4, which state:

> 2.  There has been no evidence presented to challenge that the no contest plea was not knowingly, intelligently, and voluntarily given.
>
> . . . .
>
> 4.  There has been no evidence presented to show that [Pedro] did not understand all the proceedings, to include the change of plea proceeding, in this case.

The record supports these findings, and we are not left with a definite and firm conviction that a mistake has been made. At a hearing on January 7, 2019, Pedro's then-counsel informed the Circuit Court that Pedro and the State had reached a plea agreement, under which Pedro agreed, among other things, to enter a no contest plea to four counts of sexual assault in the second degree.  At that time, pursuant to HRPP Rule 11(c), the Circuit Court carefully reviewed the entire change-of-plea form with Pedro.  At the outset, the Circuit Court noted the presence of the interpreter to assist Pedro.  Pedro acknowledged that he had the assistance of the interpreter, as well as his attorney, in reviewing the change of plea form.  The Circuit Court then established Pedro's age, level of education, and language competency, and confirmed that at the time of the hearing, Pedro had a clear mind.

During the colloquy with the Circuit Court, Pedro confirmed he understood the original charges against him, as well as the reduced charges of sexual assault in the second degree. The following exchange occurred:

> THE COURT:  . . . Two says, I have received a written copy of the original charges in this case.  The charges have been explained to me.  I understand the original charges against me.
>
> Is that true?
>
> [PEDRO]: Yes, sir.
>
> THE COURT:  I told my lawyer all of the facts  I know about the case.  My lawyer explained the government's evidence against me, my possible defenses, and the facts which the government must prove in order to convict me.
>
> Is that all true?
>
> [PEDRO]: Yes, your Honor.

4

> THE COURT: Item three reads, I understand the reduced charges of sexual assault in the second degree in counts one through four with which the government has agreed to charge me, instead of the original charges of sexual assault in the first degree.
>
> Is that true?
>
> [PEDRO]: Right, your Honor.

The Circuit Court also confirmed that Pedro understood the penalties, including the maximum term of imprisonment, that could be imposed for the offenses to which Pedro was pleading.

Regarding Pedro's jury trial waiver, the following exchange took place:

> THE COURT: . . . Please pay special attention to paragraph five. These are your constitutional rights, and they are guaranteed to you.
>
> Starts with, I know I have the right to plead not guilty and have a speedy and public trial by jury or by the Court.
>
> Do you understand you have that right?
>
> [PEDRO]: Yes, your Honor.
>
> THE COURT: Do you understand that by entering your plea today you are giving up that right and there will be no trial of any kind?
>
> [PEDRO]: Yes, your Honor.
>
> THE COURT: Next says, I know in a trial the government is required to prove my guilt beyond a reasonable doubt. I know I can see, hear and question witnesses who testify against me, and I may call my own witnesses to testify for me at trial.
>
> Do you understand you have those rights?
>
> [PEDRO]: Yes, your Honor.
>
> THE COURT: Do you understand that by entering your plea today you are giving up those rights?
>
> [PEDRO]: Yes, your Honor.
>
> THE COURT: Next says, I understand I have the right to take the stand to testify. And I have the right not to testify at trial.
>
> Do you understand you have those rights?
>
> [PEDRO]: Yes, your Honor.
>
> THE COURT: Do you understand that by entering your plea today you are giving up those rights? There will be no trial. Again, there will be no trial.
>
> [PEDRO]: Yes, your Honor.

> THE COURT: It's not on the form, but I want you to know that a jury is made up of 12 members of our community. You may participate in the selection of that jury through your attorney. The jury's verdict must be unanimous, which means they must all agree.
>
> If you waive your right to a jury trial, then a judge and a judge alone will determine your guilt or innocence.
>
> Do you have any questions about that?
>
> [PEDRO]: No, your Honor.
>
> THE COURT: The last line in item five reads, I know by pleading, I give up the right to file any pretrial motions, and I give up the right to a trial and may be found guilty and sentenced without a trial of any kind. I also give up the right to appeal anything that has happened in this case to me.
>
> Do you have any questions about what I've just explained to you?
>
> [PEDRO]: No, your Honor.

The Circuit Court informed Pedro that "if [he] sign[ed] this [change-of-plea] form a second time in open court [he would] be acknowledging that the Court has personally questioned [him] and that [he] understood this form before signing it a second time." The court also told Pedro that "if [he did] not understand the form, or if [he did] not agree with it, then do not sign it." Pedro then signed the form, and the court found him guilty of the four charges of sexual assault in the second degree.

In the face of this record, Pedro argues that his "unrebutted testimony" during the subsequent May 14, 2019 sentencing hearing showed that he did not understand the charges against him. However, Pedro did not testify at the sentencing hearing. His only statement during the hearing was his unsworn allocution immediately prior to the Circuit Court imposing sentence. At that time, the following exchange occurred regarding the charges:

> THE COURT: I read your letters [to the court], Mr. Pedro. Is there anything else you wish to add?
>
> [PEDRO]: Um --
>
> THE COURT: You wrote those letters?
>
> [PEDRO]: Yes, sir. I, yeah.

THE COURT: Was there anything else you wanted to add in addition to that? You wanted me to read those letters; right --

[PEDRO]: Yes, sir.

. . . .

[PEDRO]: I didn't know what was my, um, charges.

THE COURT: You didn't know your charges?

[PEDRO]: Yeah.

THE COURT: Okay. Well, you seem to write about it in your letter though. Like you wrote about what you said you didn't do, based on what you must have known you were accused of doing.

You didn't write about a burglary. You didn't write about a shoplift. You didn't write about a stolen car.

You wrote about having consensual sex with a 17 year old. So you knew what the case was about; right?

[PEDRO]: Yeah, but I never really know what the whole --

THE COURT: Well, then why did you write the letter the way you wrote it? What did you think this case was about?

[PEDRO]: Because they told me when I went to -- um, when they took me to MPD they told me that I was charged with, um, sexual assault.

THE COURT: And when did they tell you that? The night you got arrested?

[PEDRO]: Yeah.

THE COURT: Okay. So you knew that before you even met your lawyer.

[PEDRO]: Yes, sir.

On this record, we conclude that Pedro did not meet his burden of establishing a fair and just reason for withdrawal of his no contest plea under the first Gomes basis. We thus conclude that the Circuit Court did not abuse its discretion in ruling that Pedro failed to establish that he did not waive his rights knowingly, intelligently, or voluntarily when he entered his plea.[4]

---

[4] We also conclude that FOF No. 5 was not clearly erroneous. There, the Circuit Court found "that although English is not [Pedro's] first language, his authorship of three (3) handwritten letters to the Court, all written in English, is indicative of his understanding of all of the proceedings in this case. In addition a court appointed interpreter was also provided for Defendant." In challenging this finding, Pedro asserts only that "[t]here was no evidence in the record to suggest that [Pedro] authorized

continued . . .

7

Pedro also asserts that "he did not receive his copy of the discovery until post change of plea and there was an alleged complaining witness recantation that was not investigated." These contentions appear to raise a claim under the second <u>Gomes</u> basis – that there were changed circumstances or new information that justified withdrawal of Pedro's plea.  To withdraw a plea on this basis, Pedro must, as an initial matter, "advance[] a claim of new information or changed circumstances with factual support that, if believed by a reasonable juror, would exculpate [him]. <u>Gomes</u>, 79 Hawaiʻi at 39, 897 P.2d at 966.

Here, Pedro does not explain the nature of the "discovery" he claims to have received after pleading no contest, and the record does not reveal what it was.  Indeed, this issue was not raised in Pedro's motion to withdraw his no contest plea. At the sentencing hearing, Pedro stated that after signing the plea agreement, "a day -- couple of days or weeks after, I got my discovery[,]" and "I found some false story on that."  He did not describe the "discovery."  In response to questioning by the Circuit Court, Pedro appeared to acknowledge that he had the police reports for his case before pleading no contest, but he had not read them because they were with his prisoner property at the jail.  Regardless, absent any indication in the record of the nature of the later-acquired "discovery" or the "false story" that it allegedly contained, Pedro did not advance a claim of new information with factual support that, if believed by a reasonable juror, would exculpate him.

Pedro also claimed for the first time at the May 14, 2019 sentencing hearing that the complaining witness (CW) was "recanting."  At that time, the Circuit Court allowed Pedro's mother (**JP**) to testify.  Initially, JP stated:  "[T]hey talk to my cousin and tell her that they ask her.  And she said he didn't have anything to do with it, with the accusation[.]"  In response to questioning by the Circuit Court, JP clarified that her

_____

continued . . .

[sic] the letters solely by himself, and without any assistance."  However, the Circuit Court directly asked Pedro whether he wrote the letters, and he responded, "Yes, sir. I, yeah."  And Pedro points to nothing in the record indicating that he wrote the letters with assistance.

cousin, Bonet, had talked to her; another family member, Marilyn, had talked to Bonet; and the CW had talked to Marilyn.  JP stated that she had spoken to Bonet about the matter three days earlier, on May 11, 2019.  She did not know when Bonet spoke to Marilyn, or when Marilyn spoke to the CW.  JP further testified that, per Bonet, the CW told Marilyn that "[i]t was not her doing[,]" and "[i]t wasn't her . . . that made up the story."  The Circuit Court summarized JP's testimony, which she confirmed, as follows: "Bonet told you that Marilyn told her that [the CW] said, it wasn't her, and whoever made up a story."

In FOF Nos. 20 and 21, the Circuit Court found as follows:

> 20.  The Defendant's mother's testimony is contradicted by [Pedro's] very own handwritten letters to the Court admitting that the sexual encounters did occur between him and the [CW] but that it was consensual.

> 21.  The Court finds that [Pedro's] motion to withdraw his plea, based on his counsel's understanding that the [CW] had recanted her allegations, lacks credibility and believability.

In COL Nos. 9-12, the Circuit Court concluded:

> 9.  The Court does not find the Defendant's mother credible, as to the information put forth by Defense Counsel that the [CW] recanted the allegations against [Pedro].

> 10.  A recantation would entail the [CW] stating that this was not a sexual assault but, a consensual sexual encounter.  The information provided was that someone, other than the [CW], made the information about [Pedro] and the [CW] up.  That is not a recantation by the [CW].

> 11.  Based on [Pedro's] own handwritten letters to the court the sexual encounter occurred between him and the [CW].

> 12.  There was no recantation, no change of circumstances, and nothing in the testimony of Defendant's mother that requires a delay in sentencing for further investigation by Defense Counsel.

Of these FOFs and COLs, Pedro challenges only COL No. 12.  FOF Nos. 20 and 21, and COL Nos. 9, 10, and 11, are therefore binding on appeal and support COL No. 12.  See State v. Rapozo, 123 Hawaiʻi 329, 334 n.4, 235 P.3d 325, 330 n.4 (2010); Amfac, Inc., v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 125, 839 P.2d 10, 31 (1992).  Pedro does not contend, and we do not find, that COL No. 12 reflects the application of an incorrect

9

rule of law. Accordingly, on this record, we conclude that COL No. 12 is not wrong.

Furthermore, we find no abuse of discretion in the Circuit Court's decision not to credit JP's testimony regarding the CW's alleged recantation. See Jim, 58 Haw. at 578, 574 P.2d at 524 ("The trial court did not believe the defendant and found his reasons for withdrawal to be without sufficient merit. On the record before us we find no abuse of judicial discretion."). On this record, Pedro failed to present a plausible claim of new information or changed circumstances under Gomes, and the Circuit Court did not abuse its discretion in denying Pedro's motion to withdraw his no contest plea on this basis.[5] See 79 Hawaiʻi at 36, 897 P.2d at 963.

(2) Pedro contends that the Circuit Court abused its discretion in sentencing him to an open ten-year term because he "did not take the matter to trial[,] thereby saving the State the time and expense . . . [and] thereby alleviating an already burdened court calendar[.]" Pedro further contends that a probation sentence would have been more appropriate because there was no applicable mandatory minimum or extended term.

Pedro has failed to show that the Circuit Court abused its discretion or that it did not consider the factors in HRS § 706-606 (2014).[6] The Hawaiʻi Supreme Court has stated:

---

[5] Because Pedro failed to meet his initial burden, his alleged undue delay in moving to withdraw, and the State's purported reliance upon the plea, need not be addressed. We therefore do not decide whether FOF No. 6 was clearly erroneous or COL No. 13 was wrong.

[6] HRS § 706-606 states, in relevant part:

The court, in determining the particular sentence to be imposed, shall consider:

    (1)    The nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    The need for the sentence imposed:

        (a)    To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

        (b)    To afford adequate deterrence to criminal conduct;

continued . . .

10

> A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Kong, 131 Hawaiʻi 94, 101, 315 P.3d 720, 727 (2013) (quoting State v. Rivera, 106 Hawaiʻi 146, 154–55, 102 P.3d 1044, 1052–53 (2004), overruled on other grounds by State v. Maugaotega, 115 Hawaiʻi 432, 442–43, 168 P.3d 562, 572–73 (2007)). "The weight to be given the factors set forth in HRS § 706-606 in imposing sentence is a matter generally left to the discretion of the sentencing court, taking into consideration the circumstances of each case." Id. (quoting State v. Akana, 10 Haw. App. 381, 386, 876 P.2d 1331, 1334 (1994)). "[A]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all the factors." State v. Hussein, 122 Hawaiʻi 495, 518, 229 P.3d 313, 336 (2010) (ellipses, emphasis, and brackets omitted).

Here, the record demonstrates that the Circuit Court weighed many factors before determining Pedro's sentence. For example, the court read the pre-sentence investigation report, as well as the letters that Pedro had sent to the court, and allowed Pedro to address the court before sentencing. The record also shows that in weighing the sentencing factors, the Circuit Court

---

continued . . .

    (c)    To protect the public from further crimes of the defendant; and

    (d)    To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)    The kinds of sentences available; and

(4)    The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

emphasized the nature and circumstances, as well as the seriousness, of Pedro's offense — four counts of sexual assault in the second degree against a 17-year-old girl.  <u>See</u> <u>State v. Sacoco</u>, 45 Haw. 288, 293-94, 367 P.2d 11, 14 (1961).  In this context, the Circuit Court specifically rejected probation as an appropriate sentence; the court also declined to impose consecutive sentences, which could have resulted in a 40-year term of imprisonment.  We conclude that on this record, the Circuit Court did not abuse its discretion in sentencing Pedro to ten years of imprisonment instead of probation.

Therefore, the Judgment; Conviction and Sentence; Notice of Entry, entered on May 15, 2019, in the Family Court of the Second Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, August 24, 2020.


On the briefs:

Shawn A. Luiz
for Defendant-Appellant.

Richard B. Rost,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge